CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

APR 2 8 2021

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# ABINGDON

UNITED STATES OF AMERICA :    Case No. 1:21CR23
                   :
v.                       :    Violations:
                   :        18 U.S.C. §§ 1347 & 1349
RALPH THOMAS REACH    :        21 U.S.C. §§ 841, 843, & 846

## <u>INDICTMENT</u>

## INTRODUCTION

The Grand Jury charges and includes in each count of this Indictment, that at times relevant to this Indictment:

### RALPH THOMAS REACH and Watauga Recovery Clinics

1.    RALPH THOMAS REACH ("REACH") was a licensed medical doctor.

2.    In or around 2012, Watauga Recovery Clinic opened in Johnson City, Tennessee. The clinic purported to be an office-based program that used medication-assisted treatment for opioid addiction.

3.    Since that time, and during the period covered in this indictment, additional clinics opened in Knoxville, Greenville, Morristown, and Newport, Tennessee. Additional clinics opened in Abingdon, Duffield, and Wytheville, Virginia, and Fletcher, North Carolina.

4.    REACH was the primary owner of Watauga Recovery Center, Inc.;

Watauga Medical Group, P.C.; Watauga Duffield Medical Center, P.C.; Watauga Recovery Center Wytheville, P.C.; Watauga Recovery Center, Johnson City, P.C.; Watauga Recovery Center, Knoxville, P.C.; Watauga Recovery Center, Newport, P.C.; Watauga Recovery Center Morristown, P.C.; Watauga Recovery Center, Greeneville, P.C.; Watauga Recovery Center, Cookeville, P.C.; and Watauga Recovery Center, Fletcher, P.C. (collectively, "Watauga Recovery Clinics").

5.     The Watauga Recovery Clinics were medical practices that purported to treat opioid addiction with buprenorphine.

6.     Buprenorphine is approved for use as part of a program to treat opioid addiction by preventing symptoms of withdrawal from heroin, oxycodone, and other opiates, and opioids. Only health care providers with a specialized DEA number (called an "X number") were permitted to prescribe buprenorphine for opioid addiction treatment. During most of the relevant time period, only *physicians* with an X number were permitted to prescribe buprenorphine for opioid addiction treatment.[1]

7.     REACH and the Watauga Recovery Clinics employed more than fifty physicians, nurse practitioners, and physician assistants at clinics in Virginia, Tennessee, and North Carolina.

---

[1] Regulations were implemented in January 2018 permitting nurse practitioners to apply for DEA X numbers.

8.     During the relevant time period, Watauga Recovery Clinics operated on a cash-only basis. That is, they accepted cash and credit card payments from patients for office visits, but did not accept Medicare, Medicaid, or other insurance. Patients of Watauga Recovery Clinics went to the clinics regularly and frequently to renew their prescriptions. At times, patients paid $100 per weekly visit, $175 per bi-weekly visit, or $300 per monthly visit.

### Federal Health Care Benefit Programs

9.     Medicare, Virginia Medicaid, and TennCare are health care benefit programs funded and administered by the United States government. Medicare, Virginia Medicaid, and TennCare provide health care benefits to eligible recipients, including payment for laboratory services, such as urine drug screens, and prescription drugs.

10.     Medicare is a health care benefit program established to provide medical services to elderly, blind, and disabled beneficiaries pursuant to the provisions of the Social Security Act. Medicare will only pay for treatments, services, and items (such as laboratory tests and prescription medications) that are considered medically necessary, performed within accepted medical standards, and rendered for a legitimate medical purpose.

11.     Virginia Medicaid is a health care benefit program established pursuant to Title 19 of the Social Security Act of 1965 and is designed to provide medical

assistance services to indigent persons. Medicaid will only pay for services and items (such as laboratory tests and prescription medications) that are considered medically necessary, performed within accepted medical standards, and rendered for a legitimate medical purpose.

12.     TennCare is a health care benefit program established pursuant to Title 19 of the Social Security Act of 1965, and it is how Tennessee provides Medicaid to its citizens. TennCare will only pay for services and items (such as laboratory tests and prescription medications) that are considered medically necessary, performed within accepted medical standards, and rendered for a legitimate medical purpose.

## Illegitimate Prescriptions

13.     Patients who had insurance, including Medicare, Medicaid, TennCare, and other health care benefit programs, used their insurance benefits to pay for prescriptions issued by REACH and other providers at Watauga Recovery Clinics. REACH and other providers caused pre-authorization forms to be issued so that insured patients could have their prescriptions covered by their insurance plans.

14.     In many cases, the prescriptions caused to be issued by REACH and other providers at Watauga Recovery Clinics were not issued for a legitimate medical purpose or within the bounds of medical practice.

15.     On occasions, REACH and others caused prescriptions to be issued in the name of a provider who did not see the patient.

USAO No. 2021R00203                4

16.    Patient records were often superficial and cut-and-pasted from elsewhere. Patient examinations often lacked adequate history-taking and assessment of potential diagnoses.

17.    Prescribed doses of buprenorphine were often unjustifiably high or above maximum recommended dosing without clear rationale.

18.    Buprenorphine doses were often not appropriately tapered.

19.    Medications, such as benzodiazepines and opioids, were often inappropriately combined and prescribed to the same patient.

20.    Prescriptions that are issued without a legitimate medical purpose or beyond the bounds of medical practice are not medically necessary.

21.    Medicare, Virginia Medicaid, and TennCare are not authorized to pay for medically unnecessary prescriptions.

### Urine Drug Screens

22.    REACH and other providers at Watauga Recovery Clinics frequently ordered both qualitative and quantitative urine drug screens for their patients. Urine drug screens are intended to assess patients for drug use and provide information that is pertinent to medical treatment.

23.    Qualitative drug screens detect the presence or absence of certain drugs in a patient's urine.

24.    A "quick-cup test," or "point-of-care test," is a qualitative test. These

tests are less reliable than automated tests, but the results are available to the provider immediately, and they are relatively inexpensive.

25.   Automated qualitative tests are performed by machine. These tests are more accurate than the quick-cup tests, but they are less reliable than quantitative tests. The results of the automated qualitative tests would typically be reported in twenty-four to forty-eight hours, but they would not be used by the provider until the patient's next visit. These tests are significantly more expensive than quick-cup tests.

26.   During the relevant time, American Toxicology Laboratory ("ATL") performed automated qualitative tests for Watauga Recovery Clinics.

27.   A quantitative drug screen detects the presence and the quantity of certain drugs in the patient's urine, drug metabolites in the patient's urine, or both. These drug screens are performed by machine and are the most reliable, and the most expensive, kind of urine drug screen. At Watauga Recovery Clinics, the results of these drug screens were often not reported for days or weeks, and were not available to the Watauga provider until the patient's next visit. At times, these results took a month or longer to be reported and were not available to the provider in time for the patient's next office visit.

28.   Quantitative tests for Watauga Recovery Clinic patients were performed by various independent laboratories from 2014 until 2017.

29.     Beginning in late 2017, Watauga Recovery referred both qualitative and quantitative urine screens to ATL, and continued to do so until in or about May 2018.

30.     The various independent laboratories placed employee "collectors" in each of the Watauga Recovery Clinics to collect specimens and send them to the lab for testing.

31.     As a condition of doing business with REACH and Watauga Recovery Clinics, independent laboratories had to agree that they would not send insured patients to collections for any unpaid out-of-pocket co-pays, deductibles, or co-insurance.

32.     As another condition of doing business with REACH and Watauga Recovery Clinics, independent laboratories had to agree that they would not send self-pay or uninsured patients to collections for any unpaid bills.

33.     Uninsured patients and self-pay patients were not required to pay anything for their urine drug screens.

34.     Insured patients paid nothing out-of-pocket, and the independent laboratories only collected what insurance companies, Medicare, TennCare, or Virginia Medicaid paid.

35.     Some of the independent laboratories would send out bills to patients, but the patients were told they did not have to pay the bills and would not be sent to

collections. At least one independent laboratory did not send out bills at all.

36.    Since Watauga Recovery Clinics' patients had no out-of-pocket costs for urine drug screens, they had more money available to pay for their cash-only clinic visit at Watauga Recovery Clinics, to the pecuniary benefit of REACH, Watauga Recovery Clinics, and others.

37.    Since Watauga Recovery Clinics' patients had no out-of-pocket costs for their drug screens, these patients were less likely to notice or care that drug screening was overused, medically unnecessary, or both.

38.    Drug screens ordered by medical providers at Watauga Recovery Clinics, including REACH, were inappropriately regular and non-random.

39.    Watauga Recovery Clinic providers, including REACH, often did not take appropriate action regarding abnormal findings in the urine drug screen results, and did not use the results of the urine drug screens for the purposes of directing medical treatment.

40.    Watauga Recovery Clinics' providers, including REACH, ordered medically unnecessary urine drug screens.

41.    Medicare, Virginia Medicaid, and TennCare are not authorized to pay for medically unnecessary urine drug screens.

42.    During the relevant time period of the Indictment, Medicare, Medicaid, and TennCare paid the independent laboratories for urine drug screens ordered by

providers at Watauga Recovery Clinics, including REACH.

## COUNT ONE

The Grand Jury charges that:

1.      The Introduction to this Indictment is realleged and incorporated as if fully set forth herein.

2.      On or about and between September 4, 2014, and on or about April 28, 2018, in the Western District of Virginia and elsewhere, RALPH THOMAS REACH, as a principal and aider and abettor, knowingly and willfully executed and attempted to execute a scheme and artifice to (a) defraud health care benefit programs and (b) obtain by means of false and fraudulent pretenses, representations, and promises, money under the custody and control of Medicare, Virginia Medicaid, and TennCare, which are health care benefit programs as defined by Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

3.      It was the object of the scheme that RALPH THOMAS REACH, Watauga Recovery Clinics, independent laboratories, and others, would cause Medicare, Virginia Medicaid, and TennCare to (a) make payments by fraudulently ordering, completing, and billing for urine drug screens that were medically unnecessary, and the results of which were not used in directing the care of the

patient and (b) make payments for prescriptions for Schedule III and Schedule IV controlled substances that were not for a legitimate medical purpose and were beyond the bounds of medical practice, knowing that Medicare, Virginia Medicaid, and TennCare would be billed for those medically unnecessary prescriptions.

4.     In furtherance of the scheme to defraud, RALPH THOMAS REACH Watauga Recovery Clinics, independent laboratories, and others:

a.     knowingly submitted or caused to be submitted, billing to Medicare, Virginia Medicaid, and TennCare, for medically unnecessary urine drug screens performed by independent laboratories;

b.     paid or received kickbacks;

c.     provided free urine drug screens to self-pay and uninsured patients, while billing insurance companies, Medicare, Virginia Medicaid, and TennCare for their beneficiaries' urine drug screens;

d.     failed to use the results of the urine drug screening to direct patient treatment;

e.     performed inadequate patient examinations;

f.     created superficial patient records;

g.     prescribed inappropriate dosages and combinations of prescription drugs; and

h.      received cash payments from patients for the issuance of such prescriptions, while causing Medicare and Medicaid to pay for such prescriptions.

5.      All in violation of Title 18, United States Code, Sections 2 and 1347.

## COUNT TWO

The Grand Jury charges that:

1.      The Introduction to this Indictment and the factual allegations in Count One are realleged and incorporated as if fully set forth herein.

2.      On or about and between September 4, 2014, and on or about April 28, 2018, in the Western District of Virginia and elsewhere, RALPH THOMAS REACH, Watauga Recovery Clinics, independent laboratories, and others knowingly conspired to knowingly and willfully execute and attempt to execute a scheme and artifice to (a) defraud health care benefit programs and (b) obtain by means of false and fraudulent pretenses, representations, and promises, money under the custody and control of Medicare, Virginia Medicaid, and TennCare, which are health care benefit programs as defined by Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

3.      It was an object of the conspiracy that RALPH THOMAS REACH, Watauga Recovery Clinics, independent laboratories, and others would cause

Medicare, Virginia Medicaid, and TennCare to (a) make payments by fraudulently ordering, completing, and billing for urine drug screens that were medically unnecessary, and the results of which were not used in directing the care of the patient and (b) make payments for prescriptions for Schedule III and Schedule IV controlled substances that were not for a legitimate medical purpose and were beyond the bounds of medical practice, knowing that Medicare, Virginia Medicaid, and TennCare would be billed for those medically unnecessary prescriptions.

4.     In furtherance of the conspiracy and to effect its object, RALPH THOMAS REACH, Watauga Recovery Clinics, independent laboratories, and others:

   a.     knowingly submitted or caused to be submitted, billing to Medicare, Virginia Medicaid, and TennCare, for medically unnecessary urine drug screens performed by independent laboratories;

   b.     paid or received kickbacks;

   c.     provided free urine drug screens to self-pay and uninsured patients, while billing insurance companies, Medicare, Virginia Medicaid, and TennCare for their beneficiaries' urine drug screens;

   d.     failed to use the results of the urine drug screening to direct patient treatment;

   e.     performed inadequate patient examinations;

f.      created superficial patient records;

g.      prescribed inappropriate dosages and combinations of prescription drugs; and

h.      received cash payments from patients for the issuance of such prescriptions, while causing Medicare and Medicaid to pay for such prescriptions.

5.      All in violation of Title 18, United States Code, Section 1349.

### COUNT THREE

The Grand Jury charges that:

1.      The Introduction to this Indictment is realleged and incorporated as if fully set forth herein.

2.      At times between on or about September 4, 2014, and on or about April 28, 2018, in the Western District of Virginia and elsewhere, RALPH THOMAS REACH, Watauga Recovery Clinics, and others knowingly conspired with one another, and with persons known and unknown to the Grand Jury, to dispense and distribute buprenorphine, a Schedule III controlled substance, without a legitimate medical purpose and beyond the bounds of medical practice, in violation of Title 21, United States Code, Section 841(a)(1).

3.      All in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(E)(i).

USAO No. 2021R00203                13

## COUNT FOUR

The Grand Jury charges that:

1.      The Introduction to this Indictment is realleged and incorporated as if fully set forth herein.

2.      At times between on or about September 4, 2014, and on or about April 28, 2018, in the Western District of Virginia and elsewhere, RALPH THOMAS REACH, Watauga Recovery Clinics, and others knowingly conspired with one another, and with persons known and unknown to the Grand Jury, to possess with the intent to dispense and distribute, and to dispense and distribute, clonazepam, a Schedule IV controlled substance, without a legitimate medical purpose and beyond the bounds of medical practice, in violation of Title 21, United States Code, Section 841(a)(1).

3.      All in violation of Title 21, United States Code, Sections 846 and 841(b)(2).

## <u>COUNT FIVE</u>

The Grand Jury charges that:

1.      The Introduction to this Indictment is realleged and incorporated as if fully set forth herein.

2.      At times between on or about September 4, 2014, and on or about April 28, 2018, in the Western District of Virginia and elsewhere, RALPH THOMAS

REACH, Watauga Recovery Clinics, and others conspired together and with others to knowingly and intentionally use, and aid and abet the use of, a registration number issued to another person, in the course of distributing or dispensing a controlled substance, in violation of Title 21, United States Code, Section 843(a)(2).

3.      All in violation of Title 21, United States Code, Sections 846 and 843(d)(1).

## COUNTS SIX THROUGH TWENTY-FOUR

The Grand Jury charges that:

1.      The Introduction to this Indictment is realleged and incorporated as if fully set forth herein.

2.      On or about the following dates, in the Western District of Virginia and elsewhere, RALPH THOMAS REACH, as a principal and aider and abettor, knowingly, intentionally, and unlawfully distributed and dispensed and caused the intentional and unlawful distribution and dispensing of the below-listed Schedule III controlled substances, in the approximate quantities listed, without a legitimate medical purpose and beyond the bounds of medical practice, by allowing the issuance of prescriptions for the following controlled substances, in his name:

| COUNT | DATE | PATIENT | DRUG | QUANTITY |
|-------|------|---------|------|----------|
| 6 | 1/11/2017 | T.C. | Subutex | 28 |
| 7 | 2/15/2017 | T.C. | Subutex | 42 |
| 8 | 5/10/2017 | T.C. | Suboxone | 42 |
| 9 | 5/31/2017 | T.C. | Suboxone | 42 |
| 10 | 6/19/2017 | T.C. | Suboxone | 14 |
| 11 | 7/19/2017 | T.C. | Suboxone | 28 |
| 12 | 8/16/2017 | T.C. | Suboxone | 14 |
| 13 | 8/23/2017 | T.C. | Suboxone | 28 |
| 14 | 11/29/2017 | T.C. | Suboxone | 56 |
| 15 | 3/20/2017 | C.E. | Suboxone | 28 |
| 16 | 5/2/2016 | K.K. | Suboxone | 28 |
| 17 | 5/16/2016 | K.K. | Suboxone | 28 |
| 18 | 5/9/2016 | J.M. | Suboxone | 42 |
| 19 | 5/16/2016 | H.R. | Suboxone | 32 |
| 20 | 3/20/2017 | H.R. | Suboxone | 28 |
| 21 | 5/16/2016 | C.R. | Suboxone | 70 |
| 22 | 5/2/2016 | E.W. | Suboxone | 10 |
| 23 | 5/9/2016 | E.W. | Suboxone | 14 |
| 24 | 5/16/2016 | E.W. | Suboxone | 28 |

2.      All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(E)(i).

## COUNTS TWENTY-FIVE THROUGH FORTY-THREE

The Grand Jury charges that:

1.      The Introduction to this Indictment is realleged and incorporated as if fully set forth herein.

2.      On or about the following dates, in the Western District of Virginia and elsewhere, RALPH THOMAS REACH knowingly and intentionally aided and abetted and caused the use by others of the registration number issued to another

USAO No. 2021R00203          16

person (specifically him), in the course of distributing or dispensing a controlled substance:

| COUNT | DATE | PATIENT | DRUG | QUANTITY |
|---|---|---|---|---|
| 25 | 1/11/2017 | T.C. | Subutex | 28 |
| 26 | 2/15/2017 | T.C. | Subutex | 42 |
| 27 | 5/10/2017 | T.C. | Suboxone | 42 |
| 28 | 5/31/2017 | T.C. | Suboxone | 42 |
| 29 | 6/19/2017 | T.C. | Suboxone | 14 |
| 30 | 7/19/2017 | T.C. | Suboxone | 28 |
| 31 | 8/16/2017 | T.C. | Suboxone | 14 |
| 32 | 8/23/2017 | T.C. | Suboxone | 28 |
| 33 | 11/29/2017 | T.C. | Suboxone | 56 |
| 34 | 3/20/2017 | C.E. | Suboxone | 28 |
| 35 | 5/2/2016 | K.K. | Suboxone | 28 |
| 36 | 5/16/2016 | K.K. | Suboxone | 28 |
| 37 | 5/9/2016 | J.M. | Suboxone | 42 |
| 38 | 5/16/2016 | H.R. | Suboxone | 32 |
| 39 | 3/20/2017 | H.R. | Suboxone | 28 |
| 40 | 5/16/2016 | C.R. | Suboxone | 70 |
| 41 | 5/2/2016 | E.W. | Suboxone | 10 |
| 42 | 5/9/2016 | E.W. | Suboxone | 14 |
| 43 | 5/16/2016 | E.W. | Suboxone | 28 |

2.    All in violation of Title 21, United States Code, Sections 843(a)(2) and 843(d)(1).

## NOTICE OF FORFEITURE

1.    Upon conviction of one or more of the felony offenses alleged in this Indictment, the defendants shall forfeit to the United States any property , real or personal, which constitutes or is derived from proceeds traceable to said offenses, pursuant to 18 U.S.C. § 982(a)(7) and 28 U.S.C. § 2461(c).

2.      The property to be forfeited to the United States includes but is not limited to the following property:

> A forfeiture money judgment not less than $500,000.00 in United States currency and all interest and proceeds traceable thereto, in that such sum in aggregate was obtained directly or indirectly as a result of said offenses or is traceable to such property.

3.      If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred or sold to, or deposited with a third person;

    c.     has been placed beyond the jurisdiction of the Court;

    d.     has been substantially diminished in value; or

    e.     has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of the defendant up to the value of the above-described forfeitable property, pursuant to 21 U.S.C. § 853(p).

A TRUE BILL, this 28th day of April, 2021.

/s/ Grand Jury Foreperson

_Whitny D. Pen_    FOR
DANIEL P. BUBAR
Acting United States Attorney