## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| vs. ) | **CASE NOs:  1:21CR00023-001** |
| ) | **1:23CR00006-001** |
| **RALPH THOMAS REACH,** ) | |
| **Defendant.** ) | |

### SENTENCING MEMORANDUM

**COMES NOW** the defendant, Ralph Thomas Reach, M.D., by counsel, and respectfully submits the following Sentencing Memorandum, stating as follows:

On March 29, 2023, Dr. Reach pled guilty to a two-count Information of Causing Drugs to be Misbranded While Held for Sale after Shipment in Interstate Commerce in violation of 21 U.S.C. § 331(k), 21 U.S.C. § 333(a)(1) and 21 U.S.C. § 353(b)(1).  The aforesaid pleas are before the Court pursuant to a Rule 11(c)(1)(c) plea agreement with the Government that stipulates an incarceration range of six to twelve months, a $50,000 forfeiture and a fine of $100,000.  In consideration of these pleas, the Government has agreed to dismiss each of the 43 felony counts contained in the Indictment.

The Court, in attempting to determine the appropriate sentence in this matter, within the confines of the plea agreement's stipulations should the

Court accept the same, is guided by the factors enumerated in 18 U.S.C. § 3553(a)(2) and must impose a sentence no greater than that sufficient to reflect the serious of the offense, promote respect for the law, provide just punishment for the offense; afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant and provide the defendant with education, vocational training, medical care or other correctional treatment in the most effective manner. U.S. v. Gall, 128 S.Ct. 586 (2007).

Departures or variances from the guidelines range in the sentence must be based upon an "individualized assessment based on the particular facts of the case before it." United States v. Carter, 564 F.3d 325, 330 (4th Cir. 2009). This should be occasioned by the Court whether the departure is above, below or within the Guidelines range. Additionally, the Court should consider the person before it as an individual as every case is a "unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Koon v. United States, 518 U.S. 81, 113 (1996).

The Sentencing Guidelines are advisory only. See United States v. Booker, 543 U.S. 220 (2005). The Supreme Court in U.S. v. Gall, 128 S.Ct. 586, rejected mindless uniformity and explicitly recognized that a "deferential abuse-of-discretion standard could successfully balance the need to reduce

unjustifiable disparities across the Nation and consider every convicted person as an individual." Id. at 598 n.8.  Moreover, simply by "correctly calculat[ing] and review[ing] the guideline range," a judge "necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities." Id. at 599.  The Courts serve a critical function in the continued promulgation and modification of the Sentencing Guidelines.  In <u>Rita v. United States</u>, 127 S. Ct. 2456 (2007), Justice Breyer described the intended evolution of the Guidelines, saying that the Commission's work is "ongoing," that it "will" collect statements of reasons when district courts impose non-guideline sentences, that it "may" obtain advice from prosecutors, defenders, law enforcement groups, civil liberties associations, experts in penology, and others, and that it "can revise the Guidelines accordingly."  This ideal set forth by Justice Breyer can only be realized if district courts disagree with the guidelines when warranted by policy considerations, and communicate those disagreements to the Sentencing Commission though their sentencing decisions.

**18 U.S.C. § 3553(a) and the Individualized Assessment of Dr. Reach.**

Dr. Reach is 63 years old having been born on October 14, 1959, in Waltham, Massachusetts, to his mother, Marjorie Barrow Reach, age 93, who lives in Florida and, and, his late father, Roy Wheeler Reach. Dr. Reach spent most of his formative years raised in Massachusetts until the family moved to

Cocoa Beach, Florida at age 12.  Dr. Reach was raised in a stable and

supportive family and maintains a very close relationship with his mother and

living siblings to this date.  He has five adult children; four from a 20-year

marriage to his first wife, Darlene Seese, and one from his current wife,

Margarita Guerrero, to whom he has been married for nineteen years.  Dr.

Reach graduated from high school in Ohio in 1977 and attended several

colleges and universities including Bob Jones University.  Although never

completing his undergraduate degree, Dr. Reach  was accepted into the

University of South Carolina Medical School where he completed his M.D. in

1986.  His early adulthood and life was profoundly affected by substance

abuse issues beginning at age 11, when he first smoked marijuana.  Following

regular usage of the same, he migrated to LSD and other drugs during his

later teenage years and began using on a daily basis at the onset of adulthood.

He dropped out of college briefly in 1979 following an overdose, but

regained sobriety soon thereafter and maintained it until 1983.  During his

time at the University of South Carolina Medical School he began drinking

alcohol, using cocaine and opiates and did so throughout the duration of his

time there.  Despite this ongoing substance abuse, he graduated in 1986,

passed the national medical boards and began practicing medicine in

Roanoke, Virginia.  In 1987, he was treated voluntarily on an inpatient basis

as Minirth Clinic in McKinney, Texas, for two months.  He was able to arrest

his substance abuse issues for more than a decade following this treatment. By this time, he was licensed and practicing in Virginia as an emergency room physician and under contract with the Virginia Health Practitioners Monitoring Program. He practiced medicine as a primary care physician and an emergency room physician until 1997. Following a difficult and tumultuous period of his marriage, much of which was born out of his substance abuse issues by his own admission, Dr. Reach relapsed and began injecting opiates on a daily basis and contemplating suicide. Following an overdose in 1997, Dr. Reach entered inpatient treatment programs in Kansas and Texas for four months. At this time, he surrendered his medical licenses and began working as an auto mechanic. His wife filed for divorce shortly thereafter and, in 2001, Dr. Reach moved to Mexico with the full intention of committing suicide through the slow burn of substance abuse. He was hopeless and, seemingly, forever lost, when he met his current wife, Margarita, in 2002, and she worked to instill a reunification of his spirit and faith. He has remained clean and sober since his spiritual awakening in 2002, returning to the U.S. and regaining medical licensure in various states. His is actively involved in the AA and NA programs on a weekly basis, under monitoring programs with various state medical boards, and serving as a sponsor to several other addicted medical professionals through the Caduceus program. Dr. Reach is the past president of the Tennessee Society of

Addiction Medicine. He was on the legislative committee of the American Society of Addiction Medicine. His office has been the model for other clinics to visit and model after. He helped write the legislation for the state of Tennessee for the OBOT (Office Based Opioid Treatment) rules and regulations and was on the governor's advisory committee in Virginia. He worked closely Dr. Stephen Loyd to improve access to treatment in both Tennessee and nationally.

Dr. Reach suffers from several health issues of significance. He has psoriatic arthritis, spinal stenosis, Barret's esophagus, GERD, hypercholesterolemia, varicose veins, hypertension, anxiety disorder and has undergone a knee replacement. He is scheduled for lumbar surgery at the end of June as evidenced by the attached letter from his physician and is, respectfully, requesting that the Court consider allowing him a delayed report date to accommodate this surgery and anticipated rehabilitation period.

Unsurprisingly, as a result of the lifelong addiction issues Dr. Reach has faced and the turmoil they have exhibited on his life, he became particularly interested in addiction medicine and began undertaking an intensive study into the same in the early 2000s following his return to the practice of medicine. He became particularly interested in the use of medication assisted treatment to arrest the brain's impulses to derail relapse and deter triggers throughout the recovery period. He became concerned about the lack of

access of the population in the greater Southwest Virginia-East Tennessee area to quality care in this then burgeoning area of medicine. While he saw the use of addiction medicine as life saving for many, he additionally was worried about its potential for abuse, particularly on the heels of the opioid crisis that had profoundly and deeply penetrated the population of the area. Indeed, Dr. Reach has spent much of the past twenty years of his life treating these patients and working to improve the quality of addiction medicine in the region as evidenced by the attached letters of support that are filed as Exhibits to this Memorandum. Consequently, he developed Watauga Recovery Centers in Johnson City, Tennessee, in 2012 with the concerted mission of providing the best quality care to patients with substance abuse issues. His program and the clinic, focusing on compassion and spiritual commitment, were both groundbreaking and effective in its mission with unprecedented success rates for recovery. Soon, the demand created by the widespread rumor of its success, caused Watauga to grow to exceed its capacity. Dr. Reach and others involved in Watauga developed other clinics in neighboring areas in an effort to meet the ever-growing demand. One cannot understate the underestimation of the overwhelming need of the patient community during this period. Literally, every week, the area news media was filled with story after story of overdose deaths from the ongoing opioid crisis. Dr. Reach was at the epicenter of this crisis and patient after

patient came to him seeking his assistance in, literally, preventing them from being the next casualty. The task of assisting so many in need was overwhelming for all involved in the health care industry at the time. Dr. Reach was no different. Despite his best efforts to recruit, staff, train and monitor quality personnel to handle such an overwhelming patient population, Dr. Reach began to realize that the problem was larger than he, alone, had capacity for or to, individually, monitor the processes of. The lack of clear regulatory structure and ambiguous directives from the federal and state governments provided additional complications. Many of these regulations and directives that were put in place in the early years of Watauga no longer exist. The impediments to recruitment of quality medical personnel necessary to properly treat this patient population have now been greatly reduced as a result and would greatly suggest that the legal violations faced by Dr. Reach herein might never have occurred in the current regulatory environment.

Dr. Reach no qualifying criminal history. He has been forthcoming about his personal involvement in this matter with both law enforcement and the Government and has readily admitted his mistake by accepting responsibility and pleading guilty to this charge, thusly preventing the Government from incurring the costs and burden of a trial. Accordingly, he would respectfully request that the Court consider a sentence at the low end

of the stipulated range contained in the plea agreement with the Government and would argue that the same would be an appropriate sentence of a sufficient length to satisfy the factors set forth in 18 U.S.C. § 3553(a)(2).

Dr. Reach is an aging man who suffers from numerous and debilitating physical conditions as set forth earlier herein.  These conditions would present an extraordinary and precarious burden on both Dr. Reach and the BOP if he were housed in general population at a traditional prison.  He is scheduled for back surgery at the end of the month and will have to undergo an extensive weeks-long rehabilitation following the same.  Respectfully, we would request that the Court allow a delayed reporting period for the service of the active portion of any sentence imposed herein and make a recommendation that he be allowed to serve his sentence at the minimum-security satellite camp at FCI Beckley or a similar and appropriate facility given his physical condition and age.

**RALPH THOMAS REACH**
- BY COUNSEL –

/s/

**JEFFREY L. CAMPBELL, VSB No.: 45247**
**CAMPBELL CHAFIN, P.C.**
**239 Park Blvd.**
**Post Office Box 986**

Marion, Virginia 24354
Telephone No.: (276) 783-8197
Facsimile No.: (276) 706-8490
E-mail: jeff@campbelllawfirmva.com

## CERTIFICATE OF SERVICE

I, Jeffrey L. Campbell, Counsel for Defendant, Ralph Thomas Reach, do

hereby certify that I electronically filed the Defendant's Sentencing

Memorandum with the Clerk of the Court using the CM/ECF system which will

send notification of such filing to Randy Ramseyer, Assistant United States

Attorney for the Western District of Virginia, by electronic mailing to

USAVAW.ECFAbingdon@usdoj.gov and to all other counsel of record, on this

the 5th day of June, 2023.

**/s/**

JEFFREY L. CAMPBELL, VSB No.: 45247
CAMPBELL CHAFIN, P.C.
239 Park Blvd.
Post Office Box 986
Marion, Virginia 24354
Telephone No.: (276) 783-8197
Facsimile No.: (276) 706-8490
E-mail: jeff@campbelllawfirmva.com



2 Sheridan Square Suite 200
Kingsport, TN 37660
**Phone:** 423.246.8061
**Toll Free:** 1.800.796.7934
**Fax:** 423.246.8278
**Website:** www.brncpc.com
**Email:** information@brncpc.com

**NEUROSURGEONS**

Ken W. Smith, M.D.

**PROFESSIONAL STAFF**
Carla Cheek, F.N.P.
Bethany Millsaps, F.N.P.

Re: Ralph T Reach, MD
DOB: 10/14/1959

To whom it may concern:

Dr. Reach is a patient of mine and with his permission I have outlined below his medical problems and need for urgent surgery. He has also informed me that he is due for sentencing concerning past legal entanglements.

Dr. Reach has congenital spina bifida occulta and a left pars interarticularis defect at L5 causing anterior and dextrorotary slippage of the L5 vertebral body over the S1 vertebral body with resultant severe compression of the left L5 nerve root. This compromise affects two separate downstream left-sided nerves which issue from L5 causing weakness and ultimately atrophy of both muscles which elevate the right big toe as well as the muscles which elevate the foot/lateral toes. Due to abnormal neural architecture, he has a conjoined right L4/L5 nerve root which is a large confluence of two usually separate structures. This enlarged root is impinged upon by overgrown bone at the facet joint of L4-5 and results in right quadriceps muscle weakness with subsequent atrophy. Due to pain and weakness Dr. Reach is presently relegated to activities of daily living.

Dr. Reach needs urgent surgery to address his anatomic abnormalities and degenerations to prevent further compromise of his left L5 nerve root and the muscles it innervates, as well prevent as his right conjoined L4-5 nerve roots from suffering significant compression and muscle weakness. This surgery is significant and involves lumbar interbody grafts, pedicle screws, and rods. He will need cardiac stress test clearance prior to the procedure. We have tentatively scheduled the surgery for June 21, 2023; after his surgery he will need approximately 5 weeks in a lumbar brace and 4 weeks of intense strengthening therapy providing the surgery goes as projected.

Should you need any further information please feel free to write at the above address or email at **information@brncpc.com**.

Sincerely,

Ken W Smith MD, FAANS

Thursday, May 11, 2023



May 30, 2023

Michael Baron, MD, MPH, DFASAM
Medical Director
michaelb@e-tmf.org

The Honorable James Parker Jones
U.S. District Judge
180 West Main Street
Abingdon, VA 24210

RE:   Ralph Thomas Reach, MD

Dear Honorable Jones,

Please allow me to introduce myself, my name is Dr. Michael Baron. I am the Medical Director for the Tennessee Medical Foundation – Physician's Health Program (TMF-PHP). I have been in this position for over 6 years. I have known Dr. Reach for many more years as we have practiced in the same specialty of Addiction Medicine and belong to the same professional organizations and attend many of the same professional meetings. Dr. Reach signed a lifetime TMF-PHP monitoring agreement in 2005 and has been monitored without interruption since that time.

The TMF-PHP is a very robust nonprofit program that was started in 1978. We have the charge for monitoring physicians and many other Tennessee Health Related Board licensees that have prescriptive authority. Our charge is to improve the quality of healthcare by ensuring healthy physicians. We do not monitor a participant's clinical practice. We do monitor for behavioral health and substance use disorders, including return to use or relapse. Our monitoring agreements include frequent, random and witnessed toxicology screens, requirements that a participant attend 3 mutual self-help or 12-step meetings per week, one professionals' group (Caduceus) meeting per week, and have case management, a worksite monitor and others as needed. I can say without equivocation that Dr. Reach has not used illicit substances or relapsed since 2005, as all 17 years of his frequent urine and hair toxicology screens have been negative.

Dr. Reach has been a leader of the local recovering community. For many years he has generously donated 4 hotel rooms for TMF-PHP participants that could not afford the cost of their own room at our yearly retreat. Dr. Reach has also worked to help develop Tennessee State guidelines and policy regarding standards of care for the treatment of substance use disorders.

As I'm sure you're aware we have an epidemic of substance use and unintentional overdose deaths in this country. One of the epicenters is northeast Tennessee and southern Virginia. The government realizes this and has removed one of the statutory requirements to prescribe medications for opioid use disorder. Section 1262 of the Consolidated Appropriations Act, 2023, removes the federal requirement for practitioners to submit a Notice of Intent (have a waiver) to prescribe medications, like buprenorphine,

for the treatment of opioid use disorder (OUD).   This change takes place June 27, 2023, and should make it easier for patients with Opioid Use Disorder to get the help they need by allowing all physicians with a DEA registration to prescribe controlled medications like buprenorphine.

Unfortunately, this Bill will not increase the number of physicians that are trained or have years of experience treating patients with addiction, the leading cause of preventable death and disability in this country.   Dr. Reach is one of those physicians and is a valuable resource to this end.  He has years of experience treating patients with substance use disorders. Removing or restricting him from the ability to treat this population will create a dearth where he is needed most and where he can use his education and experience to treat patients at risk for drug overdose. His absence from practice has the potential to put patients' lives at risk for drug overdose and death.

I am not aware of the many variables and factors that are taken into consideration when sentencing. I am also not privy to the 3 misdemeanors that were agreed to in his plea bargain. I am very aware that losing any physician with Dr. Reach's level of experience treating patients diagnosed with substance use disorders will be detrimental.  Please take this into consideration as you discharge your sentencing duties.

Dr. Reach's mental health will be fully monitored by the TMF-PHP, as long as he maintains a Tennessee medical license.  Your Honor can order a requirement that he maintain 100% compliance with his TMF-PHP monitoring agreement. Should that be imposed, any return to use or relapse will immediately be reported to the Medical Board, Court or parole officer and Dr. Reach can be ordered to cause the TMF-PHP to provide a quarterly letter of compliance sent to the Medical Board, Court or parole officer.

In summary, I fully support maintaining Dr. Reach's continued ability to practice the specialty of Addiction Medicine.  The TMF-PHP will help ensure his compliance by monitoring his mental health including his personal long-term recovery from addiction.

With warmest regards,

Michael Baron, MD, MPH


CC:     Campbell Law Firm
        P.O. Box 986
        Marion, VA  24354
        jlc@cclawfirm.net

5/31/23, 8:33 AM                                        Campbell and Chafin PC Mail - Fw: letter

 Gmail                                                    **Jeffery Campbell <jlc@cclawfirm.net>**

## Fw: letter
1 message

**Tom Reach** <medmax1959@hotmail.com>                           Tue, May 30, 2023 at 4:36 PM
To: Jeff Campbell <jlc@cclawfirm.net>

**From:** wforstchen@aol.com <wforstchen@aol.com>
**Sent:** Tuesday, May 30, 2023 2:55 PM
**To:** medmax1959@hotmail.com <medmax1959@hotmail.com>
**Subject:** letter

RE:  Doctor Thomas Reach
FROM:  William R. Forstchen Ph.D.
DATE: May 30, 2023


I am alive today because of Dr. "Tom" Reach.  That is a simple straight forward statement of fact.  I've been a professor of History and Faculty Fellow at Montreat College for over thirty years.  When Tom came into my life I had become an alcoholic and was slowly committing suicide.

I had a very successful career not only as a professor but as a New York Times best selling author, my works including the rather well known "One Second After" and over fifty other books.  In outward appearance it seemed as if I was on top of the world until a very nasty divorce hit five years ago, with a wife whom I thought was faithful, but in fact finally took off with another man.

In short I crashed.  I went from the occasional glass of wine to consuming up to a fifth a day of scotch.  Concurrent with this collapse Tom came into my life, attending evening classes the college offered to adults about the Civil War and World War II.  Tom and I became casual friends, but with his professional background he quickly sensed what was happening to me.  Several close friends finally teamed up with Tom and tried an intervention, without success.  Frankly I was beyond caring and refused their help.

Three years ago, on May 25th, 2020, I literally passed out in the local Ingles.  Taken home, I turned to one of my friends, who called Tom, who was at my house a few hours later.  He talked me into detox.  I refused to go to some "home" or facility so Tom took control and said he'd move in

with me.  This from a guy who I knew casually as a friend up until this time.

Several days later he actually moved in.  I didn't realize at first how far gone I was.  Yes, it was bad that first week, sick with withdraw symptoms.  About three or four days in, I got up in the middle of night to try to make it to the bathroom (ashamed to admit I was losing control of body functions) collapsed and broke a few ribs.  Tom had to pick me up, put me back to bed, and yes, clean up one heck of a mess.

He was doctor and nurse, preparing meals, talking, a lot of talking, and just being there through the worst of it.  This guy, a stranger a year ago, was working to redirect my life.   When I was finally through the worst of it, he met with friends of mine to help keep an eye on me and gradually I came back to the world of the living.  For months he took time to call every day to make sure I was straight and sober.  The craving for booze finally died out, my health started to return.  He went with me when I met with my regular physician, he was, just simply. . .there.  The friendship has been close ever since.

It's been three years.  I assume I'm not the first to receive such caring treatment and friendship from Tom, I know I won't be the last.

In short, I'll restate it, I'm alive because of Dr. Tom Reach.

William R. Forstchen Ph.D.
Professor of History and Faculty Fellow Montreat College
NYT best selling author of over 50 books.

The Honorable Judge Jones:

I am privileged to write this letter of support for Dr. Ralph Reach. I met Dr. Reach while interviewing for a position as a Clinic Director at his medical clinic in Johnson City, TN in 2017. Although I was not hired for the position, I continued to interact with Dr. Reach while I facilitated caduceus meetings.

In 2017, my husband and I opened our own medical clinic. It was in December 2018 that Dr. Reach joined our clinic as a medical provider. Since the beginning of his employment, Dr. Reach has been a dedicated, collaborative, educational, and valuable member of our multidisciplinary team.

Dr. Reach's dedication to patient care has allowed our clinic to successfully grow and treat patients more efficiently. He has developed a long list of patients who have done very well in substance use treatment under his care. Dr. Reach makes the extra effort to call his patients and reach out to them when they are struggling with life issues. He is also quite generous by offering free care to patients struggling with financial issues.

During his employment, he has participated in our OBOT state licensure audits and Medicaid MCO audits. His insight and experience contributed to the clinic obtaining audit scores close to 100% for the last four years. This requires a high level of diligence and commitment to documentation and attention to detail.

On a daily basis, Dr. Reach educates the patients and staff. He participates in lectures to staff on a regular basis. The staff often seek Dr. Reach's expertise when they have questions about patient care. Dr. Reach has been a wealth of knowledge for our patients who are struggling in finding support and collaboration in the recovery community.

Dr. Reach is a team player. He has managed to continue working at our medical practice while also working other jobs. Initially, he only worked a few days per week but gradually increased his hours to 5 days per week at our medical office. He makes it a point to be on time and available for questions or patient concerns. Dr. Reach is well liked by the staff and have enjoyed working with him for the last four years. It is our hope that he continues to work with our clinic in the future.

Personally, I have enjoyed getting to know as well as work with Dr. Reach. He has become a dear friend and colleague. He is empathic, humorous and has a great deal of insight in the field of substance use treatment. I am supportive of his decisions and look forward to a continued collegial relationship.

With my deepest respect,

Alicia Caffrey, PhD

*Via email*

May 31, 2023

The Honorable Judge Jones

Re: R. Thomas Reach, M.D.

Dear Judge Jones:

Thank you for considering my comments herein regarding Dr. Reach.

I became acquainted with Dr. Reach during 2018 as a result of a referral by a physician whom I admire very much.

I have visited and talked with Dr. Reach many times, and my teammates in my prior company, JourneyPure, worked with Dr. Reach. During the time we worked together, Dr. Reach provided excellent clinical care for dozens of patients and achieved very good results in regard to his patients learning to cope with and manage their addiction.

There is no question in my mind that Dr. Reach has helped thousands of persons manage their addiction, to have a functioning lifestyle and for many just to not overdose and stay alive. Dr. Reach has a passion for helping other folks have a better quality of life.

We need more physicians like Dr. Reach and I hope he can continue his practice of medicine.

Thank you.

Sincerely,

Kevin D. Lee

9102 Heritage Drive
Brentwood, Tennessee 37027

615-973-3500



3425 Parkcliff Drive

Kingsport, Tennessee 37664

May 28, 2023

To: Honorable Judge James P. Jones

Regarding Sentencing of Dr. Tom Reach

Dear Sir:

This is a letter of support for Dr. Tom Reach who will appear before the court soon regarding his pleading guilty to three misdemeanors of misbranding. I am president of a charitable clinic in Kingsport, Friends in Need, which helps provide medical and dental care to the uninsured and underinsured of our region. I have known Dr. Reach for the last several months as he has served as our acting medical director. He has provided good medical management for our patients and has helped supervise our nurse practitioner and directed our nursing staff.

We were aware of his legal issues at the time of his being hired. We called and spoke with multiple physicians and prior co-workers about the details. More importantly we investigated extensively his past behavioral history and his work history over the past three years, and discussed with state officials his work history and prescribing, etc. It is clear that he has been humbled by all of this and is penitent. Our medicine committee of four physicians felt he could perform the duties we needed and that his competence was adequately demonstrated, so we hired him. He has performed very adequately, and there have been no significant issues or concerns.

We have experienced no problems with his behavior or his relationships with patients and families. All proper prescribing habits have been followed and been appropriate.

I am aware of his potential prison sentencing, and probation/confinement, fines, etc. He is currently serving our needy patients and families effectively. It is very difficult to recruit competent physicians to fill the role he has embraced. It seems this entire ordeal has been quite punishing for Dr. Reach, as perhaps it should be. That said, I can't see a great deal of good to come of a prison sentence or license removal, taking him away from patients he can be helping and a clinic needing his skills.

This is a request for leniency in Dr. Reach's sentencing. I would be happy to answer any questions or provide any further information you might find helpful. Thank you.

Respectfully yours,

Harrison D. Turner MD, FACC

# City View Law Office
## Post Office Box 220
## Natural Bridge Station, Virginia 24579

### (540) 473-2000

MEMO

TO:  The Honorable James P. Jones
      U.S. District Court Judge
      Western District of Virginia

FROM:  Albert D. Buford, III *Bert Buford*
        Attorney at Law

RE:  Ralph Thomas Reach, M.D.

DATE:  May 30, 2023

I write in support of the plea agreement that your court is now
entertaining, per efforts by all in recent days. I have known Dr.
Reach for many decades, even if we were not living near each
other for the last years. I believe his talents are extraordinary: from
his early days volunteering in multiple Free Clinics, to his efforts,
in recent years, to assist many deserving patients to reach, and in
the end, achieve sobriety. Such can be a tedious, tiring process.
Tom has aggressively pursued such, since long ago achieving his
own sobriety.

Then there is this: because of my age, I have in recent years, done
a number of pro bono cases: really, the only cases I do now. I am
78 years old. I have relied on Tom for assistance per his expertise,
as I took a poor client into the throes of an SSI case.  He has
clearly delivered critical testimony before SSA/ALJ judges at the
Office of Hearings and Appeals. Obviously, his help has always
been essential.

The Honorable James P. Jones
U.S. District Court Judge
Western District of Virginia
May 30, 2023
Page Two of Two

Having represented health care providers, e.g., all Tenet Healthcare
acute care hospitals in California, I feel I am a good judge of his
medical ethics. Not one medical provider has ever been more
pristine in explaining what medical issues presented: and with the
most understandable, cogent iterations, as to what was at issue,
medically. My work with Tenet was, and all of it, involved in
reversing illegal Medicare denials of reimbursement, this per their
most frail patients: those receiving an acute (inpatient) level of
care.

It would be an honor to speak with you in person, should you
desire my direct testimony. Summary: I am confident that, per your
Order, that his continuing to be allowed to practice medicine will
benefit all: especially, those patients who are, really, hidden in the
woodwork. He knows where they are: and how to reach them,
quietly, and compassionately.

For your courtesies, I thank you, kindly.

/adb



**NC PROFESSIONALS HEALTH PROGRAM**

This record which has been disclosed to you is protected by federal confidentiality rules (42 CFR part 2). The federal rules prohibit you from making any further disclosure of this record unless further disclosure is expressly permitted by the written consent of the individual whose information is being disclosed in this record or, is otherwise permitted by 42 CFR part 2. A general authorization for the release of medical or other information is NOT sufficient for this purpose (see § 2.31). The federal rules restrict any use of the information to investigate or prosecute with regard to a crime any patient with a substance use disorder, except as provided at §§ 2.12(c)(5) and 2.65.

42 CFR part 2 prohibits unauthorized disclosure of these records.

May 31, 2023

The Honorable Judge James P. Jones
c/o Campbell Law Firm
180 W. Main Street
Abingdon, VA 24210

Re: Ralph Thomas Reach MD
Monitoring Contract Began: 5/6/19          Monitoring Contract Ends: 5/6/24

I have the above participant's consent to disclose to you that they signed a Recovery Monitoring contract with the North Carolina Professionals Health Program (NCPHP). We are pleased with the progress to date and do support this NCPHP participant's continued practice.

Under the terms of this monitoring contract, Dr. Reach meets with NCPHP staff on a regular basis, is subject to multiple random drug screens, and attends weekly abstinence-based self-help meetings. Dr. Reach must remain in compliance with a monitoring contract to maintain NCPHP's support.

Please be aware that we are unable to make any representation concerning the participant's education, training, qualifications, experience, background, or competence. Except for the information set out related to the individual's participation in our program, we assume no responsibility for investigation or verification of the participant's credentials or background. This letter is not intended to serve as a substitute for appropriate background investigation and credentialing procedures. State and/or federal regulatory agencies may impose separate and unrelated restrictions or conditions about which NCPHP is unaware.

This information has been disclosed to you with the permission of the participant. Do not re-disclose this information without the permission of the participant.

NCPHP will notify you promptly if there are changes in our ability to support the participant's medical practice. Please feel free to contact our office if you have concerns or require additional information.

Sincerely,

Clark Gaither, MD, MRO, FAAFP
Medical Director

cc: Ralph Thomas Reach MD

6/5/23, 7:41 AM                                    Dr Reach Letter.jpeg



June 5, 2023

The Honorable Judge James P. Jones,

It is my honor to write to you in the sincere hope that you will find it reasonable and prudent to choose leniency in the sentencing of Dr. R. Thomas Reach. I hope that you will consider what an asset to society he is, and how capable he is to continue helping make positive change in the realm of addiction recovery; something the world needs now more than ever.

Dr. Reach and I have known each other for close to ten years. I consider him a dear friend and a highly valued colleague. His medical knowledge and expertise are remarkable, yet his ability to help people believe in themselves and grow as individuals is even more impressive. I have heard this from mutual clients/patients and have witnessed firsthand his particularly effective coaching and bedside manner. While remaining the consummate professional, he speaks to patients from a place of genuine humility and personal understanding. His experience overcoming the scourge of addiction is an asset that he speaks about regularly to help his patients feel more comfortable and connected. For example, "I can't believe he's a recovering addict just like me," is a common refrain I have heard from his patients more than once. Tom's authenticity helps people heal; both patients and colleagues alike.

When Tom and I partnered on our first project, I was relatively early in my recovery from addiction. Even so, he saw beyond the mistakes of my past and entrusted me with setting up a residential recovery program at his Abingdon property. The trust he placed in me was transformational. For the first time I started seeing myself as a legitimate addiction professional with a bright future in the field, and as someone who was worthy of trust. It began sinking in that I had something real to offer, that I could dream big, and with the help of people like Dr. Reach, those dreams could become reality. In fact, during our 2nd project together, with my company, Phoenix Recovery, we developed a combined clinical and medical model of residential recovery that had a long-term success rate of nearly 90% (as reported by Western North Carolina's Managed Care Organization, Vaya Health).

In the very near future, it is my intention to build upon our previous successes and to partner with Dr. Reach again for a major collaborative project, The Freedom Training Centers and Recovery Ranch. We intend to open several of these next-generation treatment centers. Our proven track record of connection-based, lead-by-example programming will revolutionize the treatment of addiction and mental health disorders. (I wish I had more space to tell you all about it.) By focusing on the importance of human connection, and meeting and treating people exactly where they are, we believe that it is possible to see a reduction in the prevalence of addiction by as much as 85% over the course of 15 years in every region in which we are operating. Our plan is to build at least 2 centers in every state.

Thank you for taking the time to read this. My prayer is that you will be as lenient as the law will allow. There is so much good that Dr. Reach can continue to do out here in the world.

Sincerely,

Jonathan Marbois-Segall
Owner/Clinical Director
Substance Abuse Counselor
Phoenix Recovery, LLC
828.242.1400

Residential Recovery ◆ Dual Diagnosis ◆ Medication-Assistance
(p) 828.242.1400 ◆ (f) 888.211.2660



## VANDERBILT UNIVERSITY
### MEDICAL CENTER

*Department of Psychiatry*
*Vanderbilt Comprehensive Assessment Program (VCAP)*

June 3, 2023

The Honorable Judge James P. Jones
180 W Main St,
Abingdon, VA 24210

Your Honor:

RE: USA v. Ralph Thomas Reach - Citation: United States v. Reach, 1:21-cr-00023, (W.D. Va.)

I am physician, licensed to practice in Tennessee (#34835), boarded in psychiatry (ABPN, 1980), and addiction medicine subspecialty (ABPM, 2021) who has practiced at Vanderbilt University Medical Center since 2001. I was recruited to Nashville by Drs. Peter R. Martin, Dr. Anderson Spickard-Jr. (deceased) and Dr. David .T Dodd (deceased) who supported the development of the Vanderbilt Comprehensive Assessment Program, for professionals, of which I serve as Medical Director.

Since 1994 at Homewood Health Center in Guelph, Ontario, Canada, I have had the privilege of evaluating and treating well over fifteen-hundred physicians who were frequently referred by medical boards or physician health programs from many states, to assess their fitness to practice. I have not formally evaluated Dr. Ralph Thomas Reach nor has he ever been a patient of mine.

The following opinion is mine personally and should not in any way be construed as representative of my employment at Vanderbilt University Medical Center.

I have known and respected Dr. Reach as a professional colleague at conferences of the American Society of Addiction Medicine and at meetings of the Tennessee Society of Addiction Medicine.

Over the years we have met or spoken by telephone occasionally about problematic cases and discussed best practices for managing the overwhelming burden of suffering and death related to the current and unrelenting epidemic of opioid overdose deaths.

Dr. Reach has also informally shared with me his personal history of addiction and recovery. He has described the burden that the investigation and indictment has placed as affecting his patients, loved ones and family. Although he has experienced profound personal stress since the investigation began, Dr. Reach has been able to accept the ordeal with admirable equanimity.

Despite the stressful effects of the investigation and charges he faces, Dr. Reach has continued to manage patients by capably practicing addiction medicine, to have deepened his personal commitment to his addiction recovery, and to have supported his family through the strength of his recovery program and involvement in 12-Step recovery support.

Dr. Tom Reach in my experience is an exceptionally bright, knowledgeable, well-intentioned, and articulate physician, in extended personal recovery, whose goal in practice appears to be providing excellent care to his patients. He is one of numerous recovering physicians that I know whose experience, treatment, monitoring, and recovery has resulted in their becoming highly skilled, empathic, and trustworthy medical practitioners of excellent character.

Your honor, I am very interested in learning the findings of the court with respect to the indictment cited above and particularly in the sentencing opinion you will hand down in the matter. However, and with great respect, I remain at complete loss to understand what purpose may possibly be served by ordering Dr. Ralph Thomas Leach to be incarcerated, and further, I cannot imagine how restricting his practice might benefit anyone.

Yours truly,

Reid Finlayson, M.D.
Professor of Clinical Psychiatry and Behavioral Sciences

Suite 3010, Vanderbilt Psychiatric Hospital,
1601 23rd Avenue South
Nashville, TN 37212
Phone office (615) 322-4567
Phone mobile (615) 479-56748

(current CV attached)

6/5/23, 7:42 AM                                                 Campbell and Chafin PC Mail - Dr Reach

 Gmail                                                        Jeffery Campbell <jlc@cclawfirm.net>

## Dr Reach
1 message

**John Markie** <john.markie@ramseysolutions.com>                              Sat, Jun 3, 2023 at 5:34 PM
To: "jlc@cclawfirm.net" <jlc@cclawfirm.net>

I've known Dr Reach for years, as a patient.

Life saver. That's what Dr. Reach is. Not because he gives me my medicine every month that keeps me alive and
functioning at an extremely high level, but because of his character and care.

I could tell you a lot, but in reality it's actually very simple. Funny how simple is usually what works.  Here are 2 simple
reasons Dr Reach is one of most important and honorable people in my life.

1. Consistency. Walk the talk. Does what he says he will do, every time. Dr. Reach does not move from topic to topic
   or medicine to medicine. He is always teaching the same thing. 12 steps of recovery and how to rebuild your brain
   through neuropatterning, specifically mediation and prayer. Not some months, not some calls, not some times.
   Every single time he is consistent with his advice and coaching because he does what he teaches and it works. I
   know it works because I am a product of his recovery therapy/coaching/life advice/mentorship.

2. The golden rule – Do to others what you would have them do to you.  That is how he treats people, as people. With
   love, care, vulnerability, passion and empathy. People know when other people care about them, and I know he
   cares deeply about me, my family, and my recovery, for a FACT.

Dr Reach not being my doctor, selfishly could have a big impact on my life, as he is the one who helped save it and
continues to. That's one person, I can't begin to think of how this could impact his hundreds of other patients, often
fighting to save their lives.

I don't know the full story, but I do know from my years of interacting with Dr Reach, he is the kind of man that just wants
to help. It's the 12 steps. Help another acholic/addict, and he's taken that so seriously that he's made a profession out of
it.

I would bet a million bucks he finds a way to continue to help others in prison, as that is just what he does, HELP
OTHERS EVERY TIME ALL THE TIME.

Consistency and character, they're hard to find these days. I'm so thankful I found that in Dr Reach.

- John Markie


**John Markie** | Assoc. Director of Sales



**Ramsey Solutions**
1011 Reams Fleming Blvd., Franklin, TN 37064
O 615.205.1869
ramseysolutions.com/trusted

 **Gmail**

**Jeffery Campbell <jlc@cclawfirm.net>**

## In regard to Tom Reach's sentencing
1 message

**Maury Hurt** <mhurt@hurtarchitects.com>
To: jlc@cclawfirm.net

Sat, Jun 3, 2023 at 3:28 PM

To the Honorable Judge Jones:

I've known Tom Reach for about 6 years, since he and I both began attending a weekly evening history class at a local college. I first grew to know Tom as an extremely kind and considerate friend. Until more recently, I had no interaction with him as an addiction recovery doctor.

Several years ago, however, Tom and I both became involved with trying to help a mutual friend of ours, Bill, who was at that time in the latter stages of alcohol addiction. Bill, a very accomplished author and college professor, had been gradually "drinking himself to death" for a number of years. Tom participated with me and several others in an intervention effort in the hope of convincing Bill that he needed to stop drinking, and to go through a detoxification process in order to stop before it killed him.

Following that intervention, Tom gave immeasurably of himself and his skill to help this man. Tom chose to live with Bill during most of what amounted to a two month long detoxification process. All of Tom's time, expertise, and effort were provided at no cost to Bill, even though Tom knew that Bill could easily have afforded it. I personally witnessed this, and can attest that it was both intense and difficult. Because of Tom's dogged and consistent care, Bill was able to detoxify and stop drinking. This in turn enabled Bill to get the additional therapy he needed to fully recover. In short, I credit Tom with saving Bill's life.

In my opinion, it would be a huge detriment to the remainder of society if Tom were to lose the ability to help people in this way. I believe that he has a God-given and inspired ability to do this work, and he is one of the most sincerely caring people I know. During his legal battle, Tom frequently wrote texts to his friends that included his prayers for the prosecutors and others involved on the opposing side in his trial. In my view, despite the fact that he has been convicted of a crime, Tom is a better person than most of us on this planet (myself included).

I hope you will factor this into your decision as to Tom's sentencing next week.

Best Regards,

Maury Hurt



**Hurt Architecture & Planning, PA**
**PO Box 1222**
**Black Mountain, NC  28711**

**Phone (828) 669-1750**

**www.hurtarchitects.com**

TERRY COMPTON
1591 ROCKY HOLLOW RD.
JONESBOROUGH, TN 37659
1 JUNE 2023

THE HONORABLE JAMES P. JONES
U.S. DISTRICT JUDGE
180 WEST MAIN STREET
ABINGDON, VA 24210

Your Honor,

I am writing on behalf of Ralph Thomas Reach, MD.

I first made the acquaintance of Dr. Reach in 1991 while an employee in the nursing department at Smyth County Community Hospital in Marion, Virginia. Since the nature of our association involved collaborating closely with one another, within a clinical setting, I was able to observe his interaction with both medical staff and patients. I found Tom to be a conscientious and very capable practitioner. Having a personal understanding of the nature of substance addiction, Dr. Reach took a particular interest in patients who suffered with substance use disorders offering them advice, encouragement, and information about resources to assist them.

Over the last thirty-two years, our association has developed into a deep and abiding friendship. Within that time, I have seen him at his absolute best and worse. For example, in 1997, responding to a hysterical call from his then wife, I found him lying unresponsive at the end of his own driveway. I was compelled to initiate CPR while waiting for emergency services. On another occasion, I sat beside his bed in the home of a mutual friend, supporting him through "cold turkey" withdrawal for several days. These events were during a period of active addiction that I feared was going to end in his death. Happily, that was not to be the case.

There is also much positive that can be said of Dr. Tom Reach. For the last twenty-one years, Tom has been a sober and active member of at least two 12 Step fellowships. Taking the program's call to "carry the message" seriously, Tom has been a mentor and sponsor to countless fellow addicts, several of which he personally attended, for no charge whatsoever, during the absolute worse stages of

their withdrawal. Not a few of those people would have most certainly died an awful death had Tom not stepped in and helped.

Professionally, his efforts for those who suffer with substance abuse disorder have been just as zealous and inspirational as those performed privately as an ambassador of the recovery community. Dr. Reach, understanding this problem as he does, is able to speak to addicts in a way that reaches them where they are. While at the head of Watauga Recovery Centers, he took a personal hands-on interest in patient services.

From insisting that peer support and 12 Step style group meetings be a part of the treatment culture of the organization to annually giving away thousands of dollars of free services and resources, Tom Reach enthusiastically advocated for not just treating patients for substance abuse disorders, but also demanding that those patients be treated with the respect that we all deserve. Was it done flawlessly? No organization is perfect, and neither was Watauga Recovery Centers, but overall, I am proud of my involvement with Tom's vision and think that our region is worse off without it.

Substance use disorder is a deadly disease. Sadly, there are hundreds of thousands of human beings who are no longer among us that painfully support that assertion. However, overdose and death does not have to be the end of the story for the sufferer. Their families need not find themselves mourning over their graves. Treatment, provided by competent caring physicians and their support staff, is saving lives every day.

Tom Reach is such a professional.

From my perspective, the social, familial, economic and educational consequences of the substance abuse epidemic are threatening the very foundations of our society and the Republic. I pray that our leadership will see this problem as the marquee issue it truly is. We need as many pullers at the oars as we can muster. Tom Reach should be one of them.

Sincerely,

Terry Compton

Patrick Lilley
146 Bealer Rd
Bristol, TN 37620

Dear Judge Jones,

I am writing on behalf of Dr. Tom Reach.

I own UnderStructureRepair, home repair contractor licensed in Tennessee. With
the direct aid of Dr. Reach, I have managed to remain sober almost 14 years. He is
both my physician and my sponsor. Both my family and I owe a great deal of debt
to Dr. Reach.

I am a part of the area 12- Step Recovery Program. We are 11,000 people from all
walks of life, staying clean and sober together.

Dr. Reach is known throughout our area as a pillar of the community and an asset
of our  sober society. He likely does more good in a day than most men do in a
lifetime.

I would humbly ask that you consider these things while you choose the fate of my
doctor and my sponsor.

Sincerely,

Patrick Lilley

Eric R. Cheadle
1205 Deermouse Way
Hendersonville, NC 28792

May 31, 2023

To the Honorable Judge Jones:

My son, Andrew, has a drug addiction.  My wife looked up rehab doctors in the yellow pages.  We had no experience in this area before and didn't know where to go for help.  We found Doctor Reach in the yellow pages at Reach Recovery and made an appointment.  Doctor Reach meet with Andrew and prescribed Suboxone.  He told Andrew that he needed to physiological help, as well.  Dr. Reach asked up to come in for an appointment and we agreed.  Andrew would pay for each session and Dr. Reach would prescribe the Suboxone on a weekly basis at first, and then eventually increased to once per month.  Andrew would talk to on the phone frequently with Dr. Reach at no charge.  All along Dr. Reach suggested that Andrew should go to AA or NA.  He also encouraged him to seek spiritually based help.

Dr. Reach helped Andrew wean off of the Suboxone over about a 9 month period.  Some places make it sound like a person will be on Suboxone for the rest of their life.  Some say it's as hard to get off of Suboxone as it is opioids.  We feel that Dr. Reach was a huge help in helping our son fighting through this stage of his road to recovery.

Best regards,

Eric R. Cheadle

Mahesh Pundit, MD
1022 Estate Dr
Johnson City, TN 37604
May 29, 2023


The Honorable Judge Jones
180 West Main St
Abingdon, VA 24210


Your Honor, Judge Jones:
I am writing in support of leniency for Ralph Reach, MD, who is being sentenced in your Court
on June 6, 2023. He has pleaded guilty to three misdemeanors of misbranding.

I have known Dr. Reach for the past year, during which time I have been engaged in an
Addiction Medicine Fellowship at ETSU, Johnson City, TN. I have worked as an Anesthesiologist
in the UK for 6 years and in Houston, TX for almost 30 years. I have also been an active member
of Alcoholics Anonymous for 30 years and celebrated my 30th sobriety birthday, last February. I
have attended Dr. Reach's Asheville Clinic over Zoom most weekends, as part of my education. I
attend at least two AA meetings and a Caduceus meeting with Dr. Reach every week.

I find Dr. Reach to be an exceptional and compassionate physician and human being. I have
observed him uniformly give patients his full attention, treating them with utmost kindness and
expertise. He enjoys a special rapport with them, informed by his own remote struggles with
Substance Use. He has been a generous mentor to me in the field of Addiction Medicine, in
which he is well-read and perpetually keeps abreast of advances through scholarly activities. I
am aware that he donates his services at least two days a week to the indigent clinic in
Kingsport, TN.

Dr. Reach is also a pillar in the weekly Caduceus group and Johnson City AA meetings, where he
guides younger physicians and sponsors several alcoholics who are in recovery. He is generous
with his resources and knowledge to all who approach him, including myself.

I beseech you to show him mercy in your sentencing, your Honor. His sequestration from
patients and his sobriety charges would be a tremendous loss to many. I hope that you may
spare him from incarceration, or being unable to practice medicine, in order that he may
continue his good works.

Thank you for your time and attention, your Honor.

Sincerely,

Mahesh Pundit, MD.

May 29, 2023

Wayne Lewis
100 Marbleton Ridge Ct.
Unicoi TN   37692

Re: Dr. Ralph Thomas Reach

Honorable Judge Jones,

I have become aware of some of the problems facing the above individual and by way of this letter I would like to offer my past experience in dealing with Dr. Reach.  I have known him for approximately 12 years and got to know him through my position as a Sr. Vice President at a local banking institution.  In my dealings with him, I found him to be honest and above board in handling his affairs.  During this time I also became aware of his caring and compassion toward others when he used personal funds for tuition and housing for needy students.  He often used his personal resources in assisting and helping others when he could have used the resources for personal needs.

Thank you for reading my letter and considering my knowledge of Dr. Reach.

Respectfully,

Wayne Lewis

Álamos, Sonora; México. June 6, 2023.

**Honorable Judge Jones.**

I am Teacher José Trinidad Rangel Nevarez, I teach English at primary schools and university, too.

I met, interact but mostly learnt from Dr. Tom Reach since 15-20 years ago in Álamos and in JC Tennessee. Since I was gifted to be able to called myself his brother, I can say our relationship is wonderful and full of times of gratefulness as well as spiritual growth.

My experience with him has always been of true admiration and respect, because he inspires and he is a truth mirror of a good life, always with a great attitude, enthusiasm, responsible, respectful and the most important full of wisdom.

A short story out of many that I can share that helped and continues to help me, is to turn our will and or lives over to the care of God with complete abandon, thanks so much for this gift. Furthermore, his love for others is so amazing. I love his family, his pets. When I grow up I want to be like Dr. Tom.

I hope and pray for God to grant wisdom for the best desition to be taken on favor of Dr. Tom, he is a great gif to humanity. Big stepping stone for many who are trying to grow along spiritual lines. I also like to emphasize that he is a very valuable member of society and that restricting his practice full of wisdom would not be of benefit to him and many. **PLEASE! DR. TOM IS A TRUE SOUL AND WANTS THE BEST FOR ALL.**

In a nut shell I can only add good comments about him, like being very generous, very kind, a wonderful, magnificent doctor, and the best a true good friend, furthermore a valuable part of the 12 step community.

Sincerely: **Teacher José Trinidad Rangel Nevarez.**

Dear Honorable Judge Jones,

I hope this letter finds you in good health and high spirits. I am writing to express my deep admiration and unwavering support for Dr. Ralph Thomas Reach, whose profound impact on the recovery community cannot be overstated. As someone who has known Dr. Reach for the past five years and has experienced his exceptional guidance and compassion firsthand, I feel compelled to highlight the immense importance of his contributions.

Dr. Reach has been an instrumental figure in my personal journey of recovery. During some of the darkest moments of my life, he provided me with a beacon of hope and a steadfast presence. Whether it was walking alongside me through the challenges of recovery, supporting me during the grieving process for the loss of my beloved grandfather, or offering a compassionate hand when I experienced a relapse, Dr. Reach has consistently been a pillar of strength and unwavering support.

What sets Dr. Reach apart is not only his medical expertise but also his profound ability to instill positivity and hope in those he interacts with. His unwavering dedication to his patients, coupled with his innate sense of empathy and understanding, has touched the lives of countless individuals on their path to recovery. Dr. Reach's guidance extends beyond the realm of medicine, as he has played a crucial role in helping individuals find solace and spiritual renewal, including my own journey toward finding Christ.

The thought of Dr. Reach losing his medical license is a truly distressing one. The recovery community, both locally and beyond, would suffer an immeasurable loss if his services were no longer available. His deep knowledge and expertise in addiction medicine, coupled with his genuine care for each individual he encounters, have made an indelible impact on the lives of countless individuals and their families.

I humbly request your consideration of the significance of Dr. Reach's contributions to the recovery community and urge you to consider the immense positive influence he has had on so many lives. Stripping him of his medical license would not only hinder his ability to continue his vital work but also deprive the community of a compassionate, dedicated, and skilled professional who has made a genuine difference.

Thank you for taking the time to review my testimonial in support of Dr. Ralph Thomas Reach. I trust that you will give due consideration to the invaluable impact he has had on the recovery community and the profound loss it would entail should his medical license be revoked. If you require any further information or testimonials, please do not hesitate to contact me.

Respectfully yours,

Branden Paris

Paris.branden@gmail.com

(828) 989-8394